Russell *v.* Lane.

SAME TERM. *Before the same Justice.*

RUSSELL *vs.* LANE and others, administrators, &c.

A creditor, on presenting a claim against an estate, to administrators, under 2 *R. S.* 88, § 35, is not bound to exhibit the evidences of his claim, or make oath of the justice thereof, unless required to do so by the administrators.

The fact that a claim was presented to administrators previous to the publication of notice to creditors, does not render the presentation invalid. A creditor has a right to present his claim to the representatives of the deceased at any time; and is not confined to the six months succeeding the first publication of the notice.

The section of the revised statutes which provides that if an executor or administrator doubts the justice of any claim so presented he may enter into an agreement in writing to refer the same, extends to all claims presented to the executor or administrator, and is not confined to those only which are specified in that section.

An executor or administrator may consent to refer a claim presented to him, notwithstanding he has not required vouchers, or an affidavit of the justice of such claim.

Power of counsel to bind their clients, by giving information.

THIS was a motion, by the plaintiff, for an order directing the defendants to pay to the plaintiff the costs of suit. It appeared by the affidavit of the plaintiff's attorney that the suit was brought to recover an account the plaintiff claimed against J. Burr, the defendant's intestate, for professional services, as attorney, solicitor and counsellor. In April, 1845, he presented the account to Mr. Lane, one of the administrators, and requested payment. Lane declined to pay the same, but said he would examine it, and give the plaintiff an answer. Hearing nothing from the administrators, in December, 1845, a copy of the account was verified by the affidavit of the plaintiff, according to the statute, and the attorney went to Troy to present

Russell v. Lane.

the same to Lane, with instructions, if he refused to pay it, to offer to refer the same. Lane being absent, the attorney called on a gentleman who he alleges was the counsel for the administrators in all matters relating to the estate, and counsel in this suit and partner of the defendant's attorney, and left the account and affidavit with him, and requested him to ask Lane to pay it, and if he declined, then to offer to refer it. That person replied, it would be useless to do so, as Lane had already made up his mind to reject the claim entirely, and had a few days before so written to the plaintiff; and that he was authorized to say Lane would not consent to a reference, as he considered the credit of $50 which the plaintiff had given on the account, was ample compensation for all he had done; but that he would present the account to him. That eight or ten days afterwards, he saw the defendant's counsel again, who told him he had presented the account and affidavit to Mr. Lane, who refused to allow or refer the claim, and that the plaintiff might sue as soon as he pleased, as the account was absolutely rejected. The suit was commenced in April, 1846, after the plaintiff's attorney had received from his client a letter of instructions to that effect, enclosing the following : " David Russell, Esquire, Dear sir : I have submitted to the parties interested in the settlement of the estate of the late Jonathan Burr the bill presented by you for professional services, amounting to about $1480. They do not consent to the payment of it, and therefore, in compliance with their wishes, I do reject the bill. Yours respectfully. J. L. Lane, adm'r, &c. of Jonathan Burr, dec'd. Troy, Dec'r 18, 1845." It was also shown that this cause had been referred to three referees, who reported $300 due to the plaintiff.

In opposition to the motion, the defendant Lane swore that an account of the plaintiff against the estate which was affixed to his affidavit, and which was not verified and contained no credit of $50, was the only account ever presented or shown to him, and was handed to him in the spring or summer of 1845, by the person spoken of in the affidavit of the plaintiff's attorney as the counsel for the estate, and that it was never presented by

the plaintiff's attorney.  That he never heard of any account verified by the affidavit of the plaintiff, or in which was a credit of $50 or any other sum, until service of the papers for this motion.  That the person referred to as being his counsel never presented any such account, nor did Lane ever tell him, or any one, that he would not refer the claim.  That he had never refused nor been unwilling to refer, nor authorized any one to say so.  That notice to creditors to produce their claims was given, by order of the surrogate, and published in July, 1845. The affidavit stated nothing in relation to any conversation with the plaintiff's attorney.  The person alleged in the affidavit of the plaintiff's attorney to be the counsel for the estate, swore that the account spoken of by Lane was left by the plaintiff or his attorney, with him, in the spring of 1845, to be presented to Lane, and was so presented by him previous to July, 1845, and was the only account he ever presented to Lane; and that he never asked Lane to refer the same, nor did Lane authorize or instruct him to refuse to refer.  That no other account had been left with, or presented to, him, and no account verified by the affidavit of the plaintiff had been presented to or left with him.  Nor did he recollect of seeing or hearing of any account on which $50 was credited.  That the plaintiff's attorney was mistaken in the statement contained in his affidavit of the conversation between them.  At the foot of the account mentioned in both of the opposing affidavits, there was a certificate of a counsellor at law, that the plaintiff was counsel for the decedent, attended the terms of the court to argue, &c. and that he thought the charge reasonable.

*C. L. Allen & C. Stevens,* for the motion, cited *Knapp* v. *Curtiss,* (6 *Hill,* 386 ;) *Gansevoort* v. *Nelson,* (*Id.* 389 ;) *Harvey* v. *Skillman,* (22 *Wend.* 571.)

*I. W. Thompson,* for the defendants, cited *Bullock* v. *Bogardus,* (1 *Denio,* 276.)

HAND, J.  The affidavits in some particulars are in conflict, but not so much, in most of the material parts, as would seem

Russell *v.* Lane.

at first view. I cannot doubt, after carefully reading the papers, that the discrepancies originated from misrecollection or pure mistake. The plaintiff's attorney may have left the first account with the defendant's counsel and not with Mr. Lane, and yet, as he states, have conversed with the latter in relation to it. And he may also have conversed with the counsel in December about the matter, but, inadvertently, omitted to leave with him the verified account. Mr. Lane is silent as to a conversation with the plaintiff's attorney in the spring of 1845. His counsel says the plaintiff's attorney is mistaken in his statement of the conversations between them and which the plaintiff's attorney says took place at Troy, in December, 1845, but I do not understand him as denying that they then and there had conversations in relation to this matter; nor does he state wherein the attorney is mistaken as to those conversations. A general allegation of a mistake in relating a conversation, without any specification, is in truth no denial, where the opposite party makes a full statement of the particulars. It gives no information, forms no issue. This would be the case if there were but a slight and immaterial error, and yet both affidavits be substantially true. I must therefore take this part of the moving affidavit to be correct in substance.

It seems to me that the following is probably a fair version of the case as made out. The plaintiff claimed $1480 as due to him from the decedent at the time of his death, for professional services. He or his attorney, in the spring of 1845, presented a copy of the account to the counsel of the administrators, who presented it to the administrator. During that spring the plaintiff's attorney saw one of the administrators, Mr. Lane, and requested payment of the account. He declined paying it, but said he would examine the matter and inform the plaintiff or the attorney whether it would be paid. In December, 1845, the plaintiff's attorney saw the counsel of the administrators, and again a few days after, and on both occasions conversed with him about the claim, and was informed by him, (as he says,) at the first interview, that the administrator had decided to reject the claim, and had so written to the plaintiff, and

Russell *v.* Lane.

would not refer ; and at the second, that his client refused to pay or refer the claim. In December, 1845, the administrator, by letter, informed the plaintiff that after submitting the matter to the parties interested in the estate, and in compliance with their wishes, he rejected the claim. This suit was commenced in May, 1846, and $300 found due to the plaintiff. What then are the rights of the parties? The verification of the claim under the statute is in no respect important to make out the plaintiff's case. That is not necessary, unless the administrator require it. (2 *R. S.* 88, § 35. *Gansevoort* v. *Nelson,* 6 *Hill,* 389.) Nor does the fact that the claim was presented before notice to creditors was published make any difference. The creditor has a right to present his claim to the representative of the deceased at any time. The estate may be settled without notice, and giving notice or not is entirely optional with the executor or administrator; and if done it is done for his convenience and safety. He may run some hazard by settling without it, but I agree with Mr. Justice Beardsley, in *Bullock* v. *Bogardus,* (1 *Denio,* 276,) that payment of costs is no part of that hazard. After the expiration of eighteen months from granting letters, proceedings to compel him to account, or by him to account, may be instituted, whether he has published notice or not. (2 *R. S.* 88, § 34; 92, § 52; 95, § 70.) But if presentation of the claim *during* the publication of the notice were necessary, rejecting the same claim during the time of the publication would waive the presentation within that time. Formally presenting it after it had been deliberately and distinctly rejected, would be idle. It is not therefore a valid objection to this motion that the claim was not presented during the six months of publication. (2 *R. S.* 90, § 41.) The motion has been mainly pressed upon two grounds. The first is that payment of the demand was unreasonably neglected and refused. It is contended that the long delay in coming to a decision, for until then there could be no reference, as it could not be known whether it would be disputed or rejected, was unreasonable, and might well induce the creditor to suppose there would be no arrangement, nothing yielded except upon compulsion. It is

Russell *v.* Lane.

true that $300 has been found due to the plaintiff, and want of assets is not pretended. But a reduction of the demand to nearly one-fifth of the sum claimed, is an answer to this part of the plaintiff's case. In such cases an administrator is deemed justified in his resistance. Perhaps even mere silence, a disingenuous refusal to allow, reject or dispute the claim, might, in a proper case, warrant the court in awarding costs, although the demand has been greatly reduced. But this is not such a case. Long before the suit was commenced, the claim was distinctly rejected.

The only remaining ground upon which the plaintiff rests his motion is, that the administrator refused to refer. On the argument I had some doubt as to the effect, in this case, of the want of vouchers, &c. and of the absolute rejection of the claim by the defendants. The words of the statute are, "if the executor or administrator doubt the justice of any claim *so presented,* he may enter into an agreement in writing" to refer, &c. Can this be done where vouchers have not been exhibited in support of the claim, and it has not been verified as required in the preceding section ; that section, in order, being the proper antecedent of the paragraph above cited? And if the absence of these is no objection to a reference, then can the administrator agree to a reference where the claim is wholly rejected? I think the phrase "any claim so presented," includes all claims presented to the executor or administrator, and not those only which are specified in § 35; and that the requirement of vouchers and an affidavit is not a prerequisite to authorize him to agree to a reference. The power to refer is given by the statute, and perhaps it was intended that he should require the vouchers and affidavit, and then if he still doubts the claim the administrator is warranted in consenting to a reference. (*See the remarks of Bronson, J.,* 6 *Hill,* 392, *and of Cowen, J.,* 22 *Wend.* 572.) But such, it is believed, is not the construction given to the statute by our courts, or by the profession. The executor or administrator may, from the first, understand the nature of the claim, and be satisfied it cannot be adjusted without the intervention of third persons ; and he is not compelled

Russell v. Lane.

to require an affidavit in all cases. As to the rejection, if the claim is admitted, if its justice is not doubted, there is nothing to refer. (1 *Denio*, 276.) It is when he has " doubt," that the administrator can refer. And it may be asked, does he doubt when, after examination, he rejects it ? If he merely doubt it, he should not absolutely reject it. That is a final disposition of it, unless the claimant sues in six months. But the language of the section barring the claim unless prosecuted within six months, implies that the executor or administrator may agree to a reference after he has rejected the claim. The statute is, " if a claim be disputed or rejected" by him, and the same shall not have been referred, &c. If the non-requirement of vouchers and affidavit, or the rejection of the claim, prevented the reference, this would be tantamount to a refusal to refer. But they do not; and therefore the plaintiff's case, if sustained, rests upon an actual refusal to refer.

This is a question of fact; and after a careful examination of the statements on both sides, I think the plaintiff has made out this branch of the case, if the information given by the defendant's counsel could affect them. The opposing affidavits deny that Lane had refused to refer, or had authorized any one to say so; but they do not deny that the gentleman alleged to be the counsel of the defendants in all matters relating to the estate was such counsel; and the plaintiff's attorney says he informed him the administrators would not consent. I cannot say, upon these affidavits, that he was not authorized to suppose they would not refer. And I have come to the conclusion, though with some hesitation, that although the counsel had no right to refuse to refer, yet his position was such that the opposing party had a right to rely upon this information. It is by no means necessary to this conclusion to impute unfairness to the defence. Probably there has been misapprehension ; and possibly if the defendant's counsel had stated the particulars of his recollection respecting the alleged conversation with the plaintiff's attorney, it might have appeared how that misapprehension arose, and what grounds, if any, the plaintiff or his attorney had for supposing a suit the only mode of redress.

Although statements made by his attorney or counsel will not estop a party, in many cases, yet on a mere question of costs, depending entirely upon the mode of prosecution, I think they, if pertinent to the case, should have weight. Mere matter of conversation with the attorney is not admissible in evidence. (*Perkins* v. *Hawkshaw*, 2 *Stark. Rep.* 234. *Wilson* v. *Turner*, 1 *Taunt.* 398.) But the acts and admissions of the attorney in the prosecution or defence of a cause always bind the client, and this is sometimes the case, though made or done before the actual pendency of the suit. (*Gainsford* v. *Grammar*, 2 *Camp.* 9. 1 *Phil. Ev.* 105. And see *Griffiths* v. *Williams*, 1 *T. R.* 710; *Standage* v. *Creighton*, 5 *C. & P.* 406; *Elton* v. *Larkins, Id.* 385; *Trice* v. *Hemming*, 7 *Wend.* 619; *Doe* v. *Bird, Id.* 6; *Burroughs, J. in College* v. *Horn*, 3 *Bing.* 119; 1 *Stark. Ev.* 365.) Perhaps counsel cannot, by virtue of their authority as such, consent or refuse to refer a claim presented against an estate; but where he is known and admitted to be the general legal adviser of the representatives, it is believed they should be deemed bound, on the question of costs at least, by any information he communicates to claimants, respecting a consent or refusal to refer. Upon the papers before me I think the plaintiff was authorized to take this view of the matter. The motion must be granted, with costs of the motion, all to be paid out of the estate.

